And finally, we'll hear Greer v. Mehiel. Good morning, Your Honors. I'm Stephen Greer, the pro se appellant, and I ask this Court to overturn the lower district court that was awarded under summary judgment and instead either award me summary judgment over a man to a jury trial. There was never a jury trial. Two issues here relating to the First Amendment. One is that I was not allowed, as a member of the press, equal access to a public meeting. The other is that the defendants retaliated against me for my reporting. And if I could direct you to the summary judgment order, which is on Special Appendix page 60, go to page 67. The decision states, Plaintiff's evidence of retaliation rests on little more than speculation. Although Serpico was aware of and disapproved of Plaintiff's blog and may have been involved in the decision to not renew Plaintiff's lease, there is no evidence on the record that Serpico wanted to harm Plaintiff because of his blog reporting. That seems as if the Court wants nothing short of a flat-out confession by Mr. Serpico. That rarely happens. A jury should have been allowed to decide this. Jury instructions and facts say that circumstantial evidence is as good as direct evidence. Again, on page 67, a quote from the decision here, the heart of the retaliation issue is whether the non-renewal of Plaintiff's lease was motivated by Plaintiff's exercise of his First Amendment right, because the record could not lead a reasonable juror to conclude that it was. Defendants are entitled to summary judgment. I do not know how a judge could have predicted a future hypothetical jury pool could have concluded this. Again, the Court usurped a jury. And that is not to say. What is the circumstantial evidence? The fact that the two men were friends? The fact that there was a smirk? And the timing? Circumstantial evidence is, A, I clearly no one denies that I reported on numerous horrific sexual scandals against Mr. Serpico and that he was ultimately fired for that. He was aware of and spoke to the entire Battery Park City Authority staff at meetings about my blog, encouraging them not to read it. A witness who worked there at the time confronted him. Hey, were you involved in Greer's eviction? He smirked, shrugged, did not deny it. There was no affidavit ever denying it. And I'm the first person in 30 years to ever be evicted for any reason whatsoever from this defendant's apartment. Roberts. What about the extensive evidence that the defendants point to about your being behind in your rent payments? Yes. I discussed that in detail in my briefs. It's beyond the scope of here. It's all completely false. I was never — I never missed rent in 14 years. And, again, evidence that that was not a reason is the original housing court case never mentioned whatsoever that missing payment was the reason. They just said, oh, it's a condo. We don't have — we have the right to not renew willy-nilly. Now, two years later, when the Battery Park City Authority lawyers got involved, they started to use that defense. And there's just no evidence that the — I have many years of e-mails where I was complaining to the landlord that their accounting system was archaic and undecipherable. So they had a chronic problem, not just with me, with everybody, with their accounting budget. And then the evidence proffered was fabricated. It was — if you look at the spreadsheets, that's not the real accounting. It was made up for the purpose of litigation. And so it should not have been factored in. And on the equal access case, I would point to page 73 of the special appendix. The summary judgment is there's no evidence that officials who decided to — well, first of all, the entire equal access decision is moot if the individuals, Maheal and Serpico, were not removed. Because Serpico and Maheal were removed at an early stage in motion to dismiss, then the other logic that the BPCA did not have — that Dennis Maheal did not have final decision-making authority is moot. But because they were removed, somehow the judge determined, the lower court determined that a CEO and a chairman did not have final decision-making authority only because theoretically the board could review. There's no evidence that the board ever reviewed this. In fact, it's standard procedure that the board never reviews matters like this. The board meets once a month to review basically RFP contracts. That's it. Everything else is delegated. New York state law gives the CEO and Maheal the right. So there's law showing that Dennis Maheal had final decision-making authority, and there's no practice on any of the meetings I've attended since 2009 where such matters were ever reviewed by a board. All right. You have saved a minute for rebuttal. Yes, sir. You can either use it now or you can use it as — I'll save it as rebuttal. All right. Then let's hear from the other side. Good morning, Your Honors. May it please the Court. Noam Beale for the Battery Park City Authority, Dennis Maheal and Robert Serpico. I just want to briefly address a couple points in Dr. Greer's argument this morning. The first is with respect to the rent arrears. I would point the Court to emails at Joint Appendix 468.6 to 468.7, where Dr. Greer accepted a settlement of his outstanding balance on rent arrears and gave an explanation for his most recent late check. In addition, Joint Appendix 1010 to 1012, there are additional emails summarized where contemporaneously Dr. Greer admitted that he had been late on his rent. There seems to be some dispute between sort of what's a grace period and what's beyond the grace period. Is that sort of reflected in what you've just said? I think there was discussion about that, Your Honor, and there were late fees and there were discussions about whether the late fees were going to be waived. I think that there's no question that the landlord defendants were well within their rights to not renew the lease because of repeated late payments. And, indeed, it's not correct that they had not taken similar action against other tenants. There was a litigation report submitted at the summary judgment stage, which is described at Joint Appendix 1019 to 1022, describing other instances where the landlord defendants had not renewed other tenants' leases because of late payment and rent. Now, that all goes to the landlord defendants. I think, in addition, there's the problem that the facts adduced to show any conspiracy between my client, Mr. Serpico, and the landlord defendants was wholly speculative, as the district court found. It amounts simply to a shrug, a post hoc email asking whether he had been evicted, and the fact that Mr. Serpico and Mr. Rossi, one of the landlord defendants, had been seen together having coffee, even in combination, those facts did not arise to the level of a conspiracy claim that should go to the jury. I just want to briefly address the question of the third amended complaint request to reinstate, as Dr. Greer put it below, Mr. Mijel and Mr. Serpico after they had been dismissed for failure to plead individual involvement in the equal access claim. The district court was well within its discretion to deny the request to amend the complaint a third time to reinstate these defendants. This was after discovery had closed. The request was made in Dr. Greer's summary judgment motion. We cited cases in our brief that where district courts routinely deny an amendment at that stage in the litigation. I would also just note that between Mr. Mijel's deposition, where he admitted that he had been the one to direct that Dr. Greer observe the meetings from a separate room, two months passed between that deposition and when Dr. Greer filed his summary judgment motion. Dr. Greer filed no less than 16 letters in the district court during that time period, and not once did he raise this issue about Mr. Mijel's testimony at his deposition. So while Dr. Greer was pro se and is entitled to the solicitude of the court, this is not a plaintiff who is bashful about notifying the court about issues, and indeed he had an opportunity over those 16 letters to raise the issue. If there are no questions from the Court, we'll rest on our papers. Thank you. Roberts. Dr. Greer. The 2019 Supreme Court case of Lozman v. the Florida municipality is extremely similar to my case. It was a man exercising his rights at a public meeting, and the corrupt board of the local municipality had him arrested. In my case, I wasn't arrested. I was barred from the meetings. The Lozman case rules that a probable cause pretext excuse is not going to defeat a First Amendment case like mine. The entire defense rests on probable cause, which I refute on the basis of evidence, and even if it were true, it wouldn't stand up to Lozman. The other thing about equal access is this Court has an opportunity to define when is it behavior warrant of merits being kicked out. Jim Acosta of CNN was kicked out of the White House, sued, but that D.C. circuit never addressed this. This would be the first time anyone could ever say, when are you so disruptive at a meeting that you deserve to be removed from the White House or the Battery Park City Authority board meeting? Of note, every single one of the defendants, from Dennis McHale, Serpico, the head of legal, the head of the head of the law, have all been fired in disgrace. There's multiple Federal lawsuits against them for the same accusations. The modus operandi of the Battery Park City Authority is to retaliate. Thank you. Thank you. We'll reserve decision, and I'll ask the deputy to adjourn. Thank you.